UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| American Petroleum Institute, | : | CASE NO. 1:23-cv-10498 |
| | : | |
| Plaintiff, | : | **HONORABLE ALLISON D.** |
| | : | **BURROUGHS** |
| v. | : | |
| | : | |
| | : | |
| | : | |
| Yatco Energy LLC | : | |
| Defendants. | : | |

**DEFENDANTS AMERICAN PREMIUM LUBRICANTS, LLC AND OUSSAMA DABAJA TRIAL BRIEF**

I.   INTRODUCTION

Pursuant to the Court's Scheduling Order (Dkt. No. 95), Defendants, American Premium Lubricants, LLC and Oussama Dabaja ("APL" and "Dabaja", respectively) file this trial brief. APL and Dabaja respectfully request that the Court permit the voir dire questions and jury instructions provided herein.

II.  DEFENDANTS' POSITIONS

   A.   VOIR DIRE QUESTIONS

APL and Dabaja jointly present the following questions that Defendants wish to ask prospective jurors.

1) Do you work in the petroleum industry?

2) Have you worked for the American Petroleum Institute?

3) Have you worked for any entity that is associated with any of the parties in this case?

4) Prior to today, were you aware of any of the parties in this case?

5) Do you have any opinions regarding the parties in this case?

6) If so, what are those opinions?

7) Have you served as a juror in a trademark case?

8) Do you have any biases against defendants in a civil trial?

9) Could you find for a defendant if you believe that the plaintiff did not carry its burden?

   B.   JURY INSTRUCTIONS

APL and Dabaja jointly present the following jury instructions.

**TRADEMARK COUNTERFEITING**

The plaintiff, American Petroleum Institute, seeks damages against American Premium Lubricants, LLC and Oussama Dabaja in his individual capacity, for trademark counterfeiting under the Lanham Act 15 U.S.C. §§ 1114(1)(a) and 1116(d). In order to show that Defendants used a "counterfeit mark," API must prove that the mark is spurious. 18 U.S.C. § 2320(d)(1)(a). A mark is "spurious" if it is "not genuine or authentic." Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, H12078 (daily ed. Oct. 10, 1984) and the mark was used in connection with trafficking in goods or services. 18 U.S.C. § 2320(d)(1)(A)(i).

API must also prove that the mark is "identical with, or substantially indistinguishable from" the genuine trademark. 18 U.S.C. § 2320 (d)(1)(a)(ii). This element assures that not every case of trademark infringement amounts to trademark counterfeiting. The "indistinguishable from" standard is to be interpreted on a case-by-case basis. Joint Statement, 130 Cong. Rec H12078. The phrase is intended to prevent a counterfeiter from escaping liability by modifying a protected trademark in trivial ways, while excluding arguable cases of trademark infringement involving trademarks which are merely "reminiscent of" protected trademarks. *Id.*

API must also establish that the genuine mark is registered on the principal register in the United States Patent and Trademark Office. 18 U.S.C. § 2320(d)(1)(A)(ii). In other words, unregistered marks cannot be counterfeited.

Plaintiff must also establish that the accused marks are used in the same goods or services for which the genuine mark is registered. 18 U.S.C. § 2320(d)(1)(A)(ii). The definition of counterfeit mark extends only to imitations of registered marks which are used in connection with the goods or services for which the mark is registered. *See* 18 U.S.C. § 2320(d)(1)(A)(ii). For example, a mark used in connection with typewriter paper which is identical to or substantially

indistinguishable from a mark registered only for use on typewriters would not be a counterfeit mark, although civil remedies might be available under the Lanham Act. See Joint Statement, 130 Cong. Rec H12079.

The use of counterfeit mark is "likely to cause confusion, to cause the mistake, or to deceive." 18 U.S.C. § 2320(d)(1)(iii). The phrase "use of which is likely to cause confusion, to cause mistake, or to deceive" is taken from the remedial section of the Lanham Act. Joint Statement, 130 Cong. Rec. H12079. This element is the essence of a trademark infringement.

API also seeks damages against the defendant, American Premium Lubricants, LLC and Ossuama Dabaja in his individual capacity, for trademark infringement. The defendant denies infringing the trademark.  It is Plaintiff API"s burden to establish that Defendants intentionally engaged in trademark infringement.

To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

### FALSE ADVERTISING UNDER THE LANHAM ACT

API has alleged that Defendants engaged in false advertising in violation of the Lanham Act.  To find false advertising, you must determine that API established the following:

(1) Defendants made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;

(2) the misrepresentation is material, in that it is likely to influence the purchasing decision;

(3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;

(4) Defendants placed the false or misleading statement in interstate commerce; and

(5) API has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir.2002).

### TRADEMARK INFRINGEMENT

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

### HOW A TRADEMARK IS OBTAINED

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.

### TRADEMARK REGISTRATION

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.

**LIKELIHOOD OF CONFUSION**

To prove infringement, the plaintiff must prove, by a preponderance of the evidence, that the defendant, without the plaintiff's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of plaintiff's mark in connection with the distribution or advertisement of goods, such that the defendant's use of the mark is likely to cause confusion as to the source of the goods. It is not necessary that the mark used by the defendant be an exact copy of the plaintiff's mark. Rather, the plaintiff must demonstrate that, viewed in its entirety, the mark used by the defendant is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

**THE PLAINTIFF'S BURDEN OF PROOF**

In this case, API contends that APL and Mr. Dabaja have infringed its trademark. API has the burden of proving by a preponderance of the evidence that API is the owner of a valid trademark and that APL and Mr. Dabaja infringed that trademark. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the defendant infringed the plaintiff's trademark. Neither APL nor Mr. Dabaja have any burden of proof to disprove API's allegations.

On the API's claim for trademark infringement, API has the burden of proving each of the following elements by a preponderance of the evidence:

First, API must establish that the registered "Starburst," unregistered "Starburst," and the registered "Donut" marks are valid, protectable trademarks;

Second, API must establish that it owns and uses the marks as trademarks;

Third, defendants actually used those marks in interstate commerce; and

Fourth, API must show that defendants used the registered "Starburst," unregistered "Starburst," and the registered "Donut" marks without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. *See Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 12 (1st Cir. 2008). To find a likelihood of confusion, API must establish that the conduct that it accuses defendants of created "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *See id.*

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

**TRADEMARK DILUTION**

API has also asserted that its marks have been diluted by Defendants. To find trademark dilution, you must determine that API must prove that (1) the marks are famous ***and*** distinctive; (2) Defendants made use of the mark in commerce; (3) Defendants' use began after the marks became famous; and (4) Defendants' use of the marks likely caused dilution by blurring or dilution by tarnishment." *See I.P. Lund Trading v. Kohler Co.,* 163 F.3d 27, 46 (1st Cir. 1998); *Bay State Sav. Bank v. Baystate Financial Serv., LLC,* 484 F.Supp.2d 205, 218 (D. Mass. 2007); *see also adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 758 (9th Cir. 2018). Dilution occurs when consumers form new and different associations with the plaintiff's mark. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010).

**INDIVIDUAL LIABILITY FOR DABAJA**

To find Mr. Dabaja individually liable for trademark infringement or any other liability under the Lanham Act, you must find that Mr. Dabaja committed acts personally that constitute

trademark infringement, trademark dilution, counterfeiting, or false advertising. *See Coach, Inc. v. Sapatis,* 27 F.Supp.3d 239, 247 (D. N.H. 2014) (analyzing contributory infringement of defendant by determining whether the defendant personally exercised control over the actions of others).

### LANHAM ACT DAMAGES

If you find for API on its Lanham Act claims, you must determine API's actual damages.

API has the burden of proving that it sustained actual damages by a preponderance of the evidence. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620 (9th Cir. 1993); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). If you find that API proved actual damages, you may make reasonable inferences from the evidence to calculate the amount of damages. Damages means the amount of money which will reasonably and fairly compensate API for any injury that you find was caused by the Defendants' infringement of the API's registered trademark. *See id.*

You should consider the following:

1) whether and to what extent that API suffered injury to its reputation;

2) whether and to what extent API suffered injury to its goodwill, including injury to the plaintiff's general business reputation;

3) whether and to what extent that API suffered lost profits that it would have earned but for the the infringement. Profit is determined by deducting all expenses from gross revenue;

4) whether and to what extent that API suffered expenses preventing customers from being deceived; and

5) whether and to what extent that API has suffered expenses of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of the infringement by the defendant.

### CHAPTER 93A

API has also asserted that Defendants acts constituted unfair and deceptive acts or practices in the course of business, trade, or commerce in violation of Mass. Gen. Laws c. 93A. In order for the plaintiff to succeed on this claim, the plaintiff must prove to you, by a preponderance of the evidence, the following three elements.

First, that Defendants engaged in trade or commerce primarily and substantially within the Commonwealth of Massachusetts. *See* M.G.L. Ch. 93A; Section 11; *Sonoran Scanners, Inc. v. Perkinelmer, Inc.,* 585 F.3d 535, 546 (1st Cir. 2009); *Szalla v. Lock*, 37 Mass.App.Ct. 346, 354, 639 N.E.2d 1096, 1101 (citing *Newton v. Moffie*, 13 Mass.App.Ct. 462, 467, 434 N.E.2d 656, 659 (1982)). If the conduct of Defendants is not primarily and substantially within the Commonwealth of Massachusetts, then you cannot find for Plaintiff.

Second, that Defendants committed unfair or deceptive act(s) or practice(s) in the trade within the Commonwealth of Massachusetts. *See Martin v. Factory Mut. Research Corp.,* 518 N.E.2d 846, 847 (Mass. 1988); *Sonoran Scanners, Inc. v. Perkinelmer, Inc.,* 585 F.3d 535, 546 (1st Cir. 2009). It is not necessary to prove that the Defendants' conduct was both unfair and

9

deceptive. It is sufficient to permit recovery if it is proven by the plaintiff that the defendant's conduct was either unfair or deceptive.

Third, API must prove that the injury for which API seeks damages was caused by the defendants' unfair or deceptive acts or practices. *See id.*

In determining whether Defendants' acts or practices are unfair, it is not always necessary that it violate some other law or a government regulation; in fact, a practice can be technically legal under other laws but still unfair. But whether or not it is permitted by law is a factor to consider. In addition, you should determine whether Defendants' actions toward API were unethical, or oppressive, or unscrupulous, or otherwise unconscionable. That involves a moral judgment about the ethics of the marketplace. As the jury, you are the collective conscience of this community, and as such are well equipped to make that judgment. In deciding whether Defendants' actions were oppressive or unscrupulous, remember that you must decide that question in the context of the commercial marketplace where, on the one hand, people don't expect to be cheated but, on the other hand, they should expect to deal with each other prudently and responsibly. *See Wasserm an v. Agnastopoulos,* 22 Mass.App.Ct. 672, 679, 497 N.E.2d 19, 23 (1986) (citing *Levings v. Forbes & Wallace Inc.,* 8 Mass.App.Ct. 498, 504, 396 N.E.2d 149, 153 (1979)).

Should you find that the Defendants' conduct was unfair or deceptive, you will also decide whether the defendant committed those unfair or deceptive actions wilfully or knowingly. Willful and knowing violations of Chapter 93A include conduct that is intentionally gainful or demonstrates a willful recklessness or conscious, knowing disregard for the likely results of a defendant's actions. *See Rass Corp. v. Travelers Cos.,* 90 Mass.App.Ct. 643, 63 N.E.3d 40, 53 (2016).

Damages under Chapter 93A are limited to actual damages suffered by API from conduct that occurred within the Commonwealth of Massachusetts. *See Mark Breiner DDS, LLC v. BTL Industries, Inc.,* D. Mass. No. 24-12413-FDS, 2026 WL 114405 (January 15, 2026). If API establishes such damages and that Defendants' conduct was willful or knowing, then API may be awarded double or treble damages and attorneys' fees and costs. *See* M.G.L. Ch. 93A.

### INDIVIDUAL LIABILITY FOR DABAJA UNDER CHAPTER 93A

To find Mr. Dabaja individually liable under Chapter 93A, you must set aside the corporate protections of APL. In law, this is called piercing the corporate veil. Piercing the corporate veil requires a finding that: 1) APL was a mere instrumentality of Mr. Dabaja; 2) Mr. Dabaja used APL to commit a wrong or fraud; and 3) there was an unjust injury or loss to API. *See Rymal v. Baergen,* 262 Mich.App. 274, 293-294, 686 N.W.2d 241 (2004). An entity is a "mere instrumentality" when it is as a sham entity of the owner to further the owner's will. *See Green v. Ziegelman,* 310 Mich.App. 436, 458, 461, 873 N.W.2d 794 (2015). When determining whether APL's corporate veil should be pierced, you must consider the totality of the evidence regarding Mr. Dabaja's operation of APL. *See id.* at 457. The evidence must establish by a preponderance of the evidence that Mr. Dabaja used APL as a sham to further his will. *See id.* at 458.

**C.    PROPOSED INTERROGATORIES OR SPECIAL VERDICT FORMS**

APL and Dabaja do not currently have any proposed interrogatories or special verdict forms.

**D.    EXHIBITS – AGREED UPON AND OBJECTED TO**.

1. Defendants' Exhibits Agreed Upon

    Article of Organization of American Premium Lubricants, LLC

    2. Business Purchase Agreement of Questron by American Premium Lubricants

2. Defendants Exhibits Objected to:

    Plaintiff's complaint and related attachments

    API's Letters to Nabil Barada

    API's submissions and pleadings in this case

    American Premium Lubricants' Counsel Letter to Nabil Barada

### III.   CONCLUSION

For the reasons stated above, APL and Dabaja respectfully request that the Court accept the voir dire questions and jury instructions submitted herewith.

Respectfully Submitted,                              Dated: Thursday, March 5, 2026

/s / Guy Sohou
_____
Guy Sohou
Attorney for Defendants Oussama Dabaja
and American Premium Lubricants
615 Griswold Suite 400
Detroit, MI 48226
313-736-5400/ Fax: 313-879-5300
gsohou@sohoulaw.com

## **PROOF OF SERVICE**

      I, Guy Sohou hereby certify that on Thursday, March 5, 2026, I filed the foregoing paper with the Clerk of the Court using the Court's electronic filing system, which will automatically send notification of such filing to all parties to the above cause.


Respectfully Submitted,                                             Dated: Thursday, March 5, 2026
/s / Guy Sohou

_____
Guy Sohou
Attorney for Defendants Oussama Dabaja
and American Premium Lubricants, LLC
615 Griswold Suite 400
Detroit, MI 48226
313-736-5400/ Fax: 313-879-5300
gsohou@sohoulaw.com